IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:13-CR-464-1 |
| | ) | |
| RONALD EARL DAVID POWERS, | ) | |
| a/k/a RONALD EARL POWERS, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

This matter is before the Court on a motion to suppress filed by the defendant Ronald Powers. (Doc. 10.) Mr. Powers contends that evidence seized during a search of 421 South Lee Street, Salisbury, North Carolina, on May 15, 2012, should be suppressed because the warrant authorizing that search was not supported by a showing of probable cause. The Court finds there was no probable cause and that it was not reasonable for the executing officer to rely on the search warrant, and therefore the Court will grant the motion.

The record reflects and the Court finds that on May 15, 2012, Sergeant N.T. Sides of the Salisbury Police Department applied to the General Court of Justice in Rowan County for a search warrant of 421 South Lee Street in Salisbury. In the application, Sergeant Sides provided the following sworn testimony, set forth in its entirety:

> On 05/15/12, Detective Shulenburger, Officers Bouk, Gibson, Benjamin and myself; [sic] went to 421 South Lee Street in an attempt to locate Willie James Johnson Jr. Willie James Johnson Jr. is a black male with a date of birth of [redacted.] Johnson had a warrant for his arrest stemming from the 04/10/2012 robbery of Dominos Pizza (warrant is for armed robbery). In this robbery, two black males entered the store, with black semi-auto handguns, and robbed the establishment of US currency.

> Detective Shulenburger and I had received information from a confidential and reliable informant that they had seen Willie Johnson Jr., along with powder cocaine and ecstasy, inside of the residence of 421 South Lee Street, within the past 24 hours. The informant also advised that they [sic] had seen a shotgun inside of the home within the past 72 hours.
>
> It was decided that we would attempt to knock on the door of 421 South Lee Street and see if we could get Willie James Johnson Jr to come out and surrender to us. Officer Benjamin and I went to the front door of the residence while Officers Bouk and Gibson, along with Detective Shulenburger, went to the back of the residence (in case anyone ran). As Officer Benjamin and I pulled up in front of the residence, we heard Officer Gibson yelling in the backyard of the home. It was found that Willie James Johnson Jr, and another black male, ran out of the back of the house upon our arrival. Detective Shulenburger gave chase to Johnson and caught him a short distance later in the woods. Once we secured Johnson we went back to the residence where Officers Bouk and Gibson had secured the residence.

(Doc. 10-1 at 4.)[1]

The application asserted that there was probable cause to believe that evidence of the crimes of "Robbery – Narcotics" was located at 421 South Lee Street. (*Id.* at 2.) The application sought the seizure of the following:

> Any evidence relating to the 04/10/2012 robbery of Domino's Pizza that would include: any weapons, ammunitions, knives, holster or firearm related articles, fingerprints, shoe prints or impressions, blood or other bodily fluids, clothing, hair, fibers, or any other forensic evidence.
>
> Any Scales, plastic baggies, manila envelopes, sifters, and similar instruments used in the bagging and selling of cocaine or the sale of ecstasy.
>
> A large quantity of paper money in United States Currency.
>
> The following writings, dated and existing over the past six months; utility bills, mailed envelope covers, bank statements, credit card bills, and similar writings to show occupancy, control, and/or possession of the place to be searched.

---

[1] The Government's brief contains other recitations of facts, but they are not in the affidavit seeking the search warrant and are not in evidence otherwise. (*See* Doc. 15 at 1-2.)

> Any notebooks or telephone records showing or recording the names or telephone numbers of persons likely engaged in the illegal sale of cocaine or other controlled substances.
>
> Cocaine and/or any other controlled substance included in the North Carolina Controlled Substances Act and possessed in violation of Chapter 90 of the North Carolina General Statutes[.]

(*Id*. at 5.) The search warrant was issued by a judge in Rowan County. (*Id.* at 1.) Sergeant Sides conducted a search of the residence.[2]

Mr. Powers contends the information provided in the application was insufficient to provide probable cause for a search warrant because it did not provide the judicial officer with information to make an independent determination about the informant's reliability, because it did not provide facts sufficient to make a connection between the robbery and the residence, and because it is a "bare bones" warrant. (*See* Doc. 10.) The Government contends that the search warrant was supported by probable cause and that, in any event, the officers reasonably relied upon the determination made by the judicial official who issued the warrant.

1. Probable Cause

The task of a judicial officer evaluating a request for a search warrant is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Fourth Amendment expresses a "strong preference for warrants," which "is most appropriately effectuated by according 'great deference' to a magistrate's determination." *United States v. Leon*, 468 U.S. 897, 913-14 (1984) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). Thus, "courts should not

---

[2] While this is not explicit in the record, the signature of the officer who made the return on the search warrant is identical to Sergeant Sides' signature on the probable-cause affidavit. (*See* Doc. 10-1 at 1, 4, 5.)

invalidate [warrants] by interpreting [affidavits] in a hypertechnical, rather than a commonsense, manner." *United States v. Ventresca*, 380 U.S. 102, 109 (1965); *accord Gates*, 462 U.S. at 236. A reviewing court's duty "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238-39 (internal quotation marks and alterations omitted). Probable cause exists where, given the totality of the circumstances, "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in the place to be searched. *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *see Gates*, 462 U.S. at 238.

The search warrant here authorized law enforcement to search the residence for evidence of three crimes: the April 10, 2012, armed robbery of Domino's; drug trafficking; and possession of illegal drugs. To the extent the warrant authorizes a search for evidence related to the armed robbery and to drug trafficking, it is clearly insufficient. It is a closer question as to the possession, but the Court concludes that the warrant is insufficient on this ground as well given the totality of the circumstances.

As to the armed robbery, the mere presence of a robbery suspect in a third party's residence more than four weeks after the robbery is insufficient to establish probable cause to search the residence for evidence about the robbery.[3] *See, e.g.*, *United States v. Jones*, 69 F. App'x 401, 404 (10th Cir. 2003); *United States v. Savoca*, 739 F.2d 220, 224-25 (6th Cir. 1984); *United States v. Flores*, 679 F.2d 173, 175 (9th Cir. 1982); *United States v. Bailey*, 458 F.2d 408, 412 (9th Cir. 1972). "In determining whether a search warrant is supported by probable cause,

---

[3] Initially, the Government took the position that the arrest warrant for Mr. Johnson on an armed robbery charge and Mr. Johnson's presence at 421 South Lee Street shortly before his arrest provided probable cause to search the residence for evidence related to the armed robbery. The Government has since conceded that these facts alone are insufficient to provide probable cause. (Doc. 17 at 2-3.)

4

the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993). Here, there is nothing to suggest that evidence of the robbery would be found at 421 South Lee Street. The affidavit does not suggest that Mr. Johnson lived there, that he had been seen in possession of firearms there, that he had been in the home immediately or even soon after the robbery, or that firearms similar to those used in the robbery had been seen in the home. There are no facts connecting the residence to evidence related to the robbery, and there is no probable cause to search the residence for evidence related to the robbery. *Cf. Steagald v. U.S.*, 451 U.S. 204 (1981)(holding that an arrest warrant is insufficient to provide authority to enter the home of a third person to look for the suspect.)

Similarly, the affidavit in support of the warrant provides no evidence that any drug sales were happening at the residence and no facts to support the inference that the residence was used to prepare or store drugs for sale. The informant's report merely indicated that he saw unspecified amounts of ecstasy and powder cocaine in the house. This is insufficient to warrant a reasonable belief that evidence of narcotics trafficking would be found. Facts related to one crime, drug possession, cannot justify a search warrant for evidence of the entirely different crime of drug trafficking. *See United States v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008) (holding search warrant defective where affiant established probable cause for child molestation but obtained warrant for search of evidence of child pornography); *see also United States v. Doyle*, 650 F.3d 460, 472 (4th Cir. 2011) (holding information in affidavit concerning allegations of sexual assault did not support probable cause to search for child pornography (citing *Hodson*, 543 F.3d at 292)); *cf. United States v. Garcia*, 809 F. Supp. 2d 1165, 1170-71 (N.D. Cal. 2011)

(holding invalid warrant to search known drug user's home for evidence of narcotics paraphernalia and packaging and noting "[d]rug dealing and drug using are categorically different crimes"). The fact that a gun was present adds nothing, as the affidavit does not indicate that it was present in the residence at the same time the drugs were present, and there is nothing in the affidavit to indicate that its possession was unlawful.

This leaves the part of the warrant which sought to search for evidence related to the possession of illegal drugs. The Government does not contend that the informant's report to law enforcement as set forth in the affidavit is sufficient by itself to support a finding of probable cause, and indeed such an argument would be futile. The informant claimed to be inside the residence three days earlier, when he saw a gun, and again one day earlier, when he saw powder cocaine and ecstasy. (Doc. 10-1 at 4.) However, the affidavit provides no information to allow the judicial official to evaluate Sergeant Sides's opinion that the informant was "reliable," and such a conclusory assertion is insufficient to give the magistrate a basis to make an individual judgment regarding probable cause. *See, e.g.*, *United States v. Bynum*, 293 F.3d 192, 203 (4th Cir. 2002). While one might infer that Sergeant Sides knew the informant and that the information was not provided anonymously, one cannot tell from the affidavit whether the informant reported the information in person or via telephone. Nor can one tell why the informant came to be inside the residence, where inside the residence the drugs were located, how he knew Mr. Johnson, or how he was able to identify cocaine and ecstasy. Nor is there anything to connect the gun to the drugs. The informant's information, taken alone, is insufficient to establish probable cause.

The Government contends, however, that law enforcement corroborated enough of the informant's information to give rise to probable cause to search for drugs. "An important factor

in determining whether an informant's report establishes probable cause is the degree to which it is corroborated." *Lalor*, 996 F.2d at 1581. Corroboration of even innocent details of an informant's report "tends to indicate that other aspects of the report are also correct." *Id.* (citing *Gates*, 426 U.S. at 244). Thus, the Fourth Circuit has found an informants' report to be reliable when law enforcement confirmed the defendant's address, vehicle, and alias given by the informant, *Lalor*, 996 F.2d at 1581; when the defendant was known to use a car parked outside the address given by the informant, *United States v. Robinson*, 221 F. App'x 236, 243 (4th Cir. 2007); and when the defendant, who the informant identified as a "large quantity heroin dealer" that he had seen in possession of heroin in the last seventy-two hours, had a criminal record and officers had previously seized drugs and large amounts of money from the search site. *Bynum*, 293 F.3d at 196-98.

In each of these cases, however, the informant reports were much more detailed than here and there were other circumstantial indicators to support the informant's veracity and/or a nexus between the search site and the evidence to be seized. In *Lalor*, for example, there were two informants who corroborated each other's statements, and one of the informants stated the basis for her knowledge—that she had purchased cocaine from the defendant on numerous occasions. 996 F.2d at 1581. In *Robinson*, the defendant was the target of a drug investigation, and the informant, who reported having worked with the defendant before, stated that the defendant was living at the subject of the search warrant. 221 F. App'x at 238, 243. Finally in *Bynum*, the

informant was known and proven and, in fact, had given law enforcement the tip which led to the earlier seizure of drugs from the same site.[4]  293 F.3d at 196-98.

Here, officers corroborated the informant's report that Mr. Johnson was in the residence when they saw Mr. Johnson run out of the house.  There are no other details in the affidavit tending to indicate the informant's truthfulness or to corroborate his very general allegation of drugs in the home.  As noted previously, the affidavit does not explain whether the informant was known to the police or the basis for his knowledge.  *See United States v. Perez*, 393 F.3d 457, 462 (4th Cir. 2004).  No information was provided to the magistrate that Mr. Powers or anyone else in the house was being investigated for drug activity, that Mr. Johnson lived in the home or was connected to drug activity, or that law enforcement had any other reason to believe the occupants of the house possessed illegal drugs in the past.  The informant's report of drugs was vague and did not mention any particular amounts, any packaging details, or even the location in the residence where he saw the drugs.  Finally, the one fact the officers did corroborate—Mr. Johnson's presence—was unrelated to the informant's claim that he had seen drugs in the residence.

While the Government is correct that officers need not confirm every underlying fact, *Perez*, 393 F.3d at 462, corroboration "must be determined in the light of the totality of the circumstances presented by the particular set of facts." *United States v. DeQuasie*, 373 F.3d 509, 519 (4th Cir. 2004) (quotation marks omitted).  "The right to privacy in one's home is a most important interest protected by the Fourth Amendment," and where an unnamed and untested informant provides a non-specific allegation of criminal activity in a residence, officers must

---

[4] Although the affidavit did not explicitly link the informant to the earlier drug seizure, on appeal the Fourth Circuit concluded that it would have been reasonable for the magistrate to infer such a connection from the details of the affidavit.  *Bynum*, 293 F.3d at 196.

have more than minimal, irrelevant corroboration to establish probable cause to search. *See United States v. Wilhelm*, 80 F.3d 116, 120-21 (4th Cir. 1996); *cf. Lalor*, 996 F.3d at 1581 (noting informants "supplied fairly specific facts").

The informant's initial report was vague and non-specific. The informant, while not anonymous, was untested and of unknown reliability. Law enforcement corroboration was minimal and unrelated to any illegal activity. The magistrate did not have a substantial basis for concluding that there was a "fair probability" that contraband would be located in the home, and the warrant was not supported by probable cause.

    2. Good Faith

The Supreme Court recognizes a good-faith exception to the exclusion of fruits of a search executed pursuant to a deficient warrant. Because "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion," courts should decline to suppress evidence obtained pursuant to a defective warrant if the officer "reasonably rel[ied] on a warrant issued by a detached and neutral magistrate." *Leon*, 468 U.S. at 913, 922. The good-faith exception does not apply, however, where (1) the affiant misled the magistrate; (2) the issuing magistrate "'wholly abandoned his judicial role'"; (3) the affidavit is "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; or (4) "the warrant is 'so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'" *DeQuasie*, 373 F.3d at 519-20 (quoting *Leon*, 468 U.S. at 923).

There is no evidence that Sergeant Sides misled the magistrate, that the magistrate abandoned his judicial role, or that the warrant was so facially deficient that the executing officer

9

could not presume it to be valid. At issue is whether a reasonable officer could have believed that probable cause existed to search 421 South Lee Street. As stated above, the affidavit did not establish a nexus between the robbery—which occurred almost five weeks earlier—and the residence. *See, e.g.*, *Jones*, 69 F. App'x at 404; *Savoca*, 739 F.2d at 224-25; *Flores*, 679 F.2d at 175; *Bailey*, 458 F.2d at 412. Indeed, no reasonable officer would believe that evidence of a crime could be found at every place a suspect visited during the month following the commission of the crime, and that is all that is present here. Likewise, it was unreasonable for the executing officer to believe that probable cause existed to search for evidence of drug trafficking based solely on a general report of unspecified amounts of controlled substances and the presence on a different occasion of a firearm. *See Hodson*, 543 F.3d at 293-94 (declining to apply good-faith exception); *see also Doyle*, 650 F.3d at 472-76.

In the hypothetical situation of an identical probable cause affidavit and a warrant authorizing a search only for items related to drug possession, perhaps a reasonable officer could have believed that there was probable cause to search for drugs. That is not the situation here, however. Instead, there is a grossly overbroad warrant authorizing a search for drug trafficking and armed robbery which no reasonable officer would have believed was supported by probable cause. In the probable cause affidavit and in the list of evidence to be seized, the drugs are no more than an afterthought, appearing "along with" the informant's sighting of Mr. Johnson and at the end of a six-paragraph list. (*See* Doc. 10-1 at 4-5.) It is clear from the affidavit that Sergeant Sides's motivation in seeking the warrant was to search the residence for evidence of the robbery. This motive, combined with a vague claim by an untested informant about drug possession and unsupported claims of reliability, casts doubt on the officer's good faith in executing the warrant. *Cf. Wilhelm*, 80 F.3d at 123 ("While perhaps not undertaken with

deliberate bad faith, [affiant's] use of phrases such as 'concerned citizen,' 'mature' and 'truthful demeanor' strike this court as attempts to endue the affidavit with the appearance of genuine substance; this tactic suggests that [affiant] herself knew that probable cause was lacking, and thus that reliance on the resulting warrant was not reasonable.").

The Supreme Court has "expressed a strong preference for warrants" and has repeatedly noted that "'in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall.'" *Leon*, 468 U.S. at 914 (quoting *United States v. Ventresca*, 380 U.S. 102, 106 (1965)). The Supreme Court has also been clear that "[d]eference to the magistrate, however, is not boundless." *Leon*, 468 U.S. at 914. The probable cause affidavit at issue here was no more than "bare-bones," and the warrant was grossly overbroad on its face. The defects in this warrant were more than technical. Under the totality of the circumstances, it was not objectively reasonable for Sergeant Sides to rely on it.

3. Severability

Alternatively, even assuming the portion of the warrant relating to drugs was supported by probable cause, the evidence should be excluded because the warrant is not severable. "When a warrant is severable, the portion of the warrant that is constitutionally infirm—usually for lack of particularity or probable cause—is separated from the remainder and evidence seized pursuant to that portion is suppressed; evidence seized under the valid portion may be admitted." *United States v. Galpin*, 720 F.3d 436, 448 (2d Cir. 2013) (internal alterations and quotation marks omitted); *see also United States v. Sells*, 463 F.3d 1148, 1154-55 (10th Cir. 2006) ("[E]very federal court to consider the issue has adopted the doctrine of severance, whereby valid portions of a warrant are severed from the invalid portions and only materials seized under the authority of the valid portions, or lawfully seized while executing the valid portions, are admissible.").

11

In applying the severance doctrine, the court first separates the warrant into constituent clauses and determines whether each clause is sufficiently particularized and supported by probable cause. *Galpin*, 720 F.3d at 448-49 (citing *Sells*, 463 F.3d 1148). The court then must determine whether the valid clauses are distinguishable from the invalid clauses, considering whether the removal of the invalid clauses "leaves behind a coherent, constitutionally compliant redacted warrant," and "whether the valid portions make up only an insignificant or tangential part of the warrant." *Id.* at 449. "[S]everance is not available when the valid portion of the warrant is a relatively insignificant part of an otherwise invalid search." *United States v. Patrick*, 916 F. Supp. 567, 574 (N.D.W. Va. 1996).

The warrant is easily separated into six distinct paragraphs. The first seeks evidence relating to the robbery, and the second, third, and fifth seek evidence related to drug distribution, (Doc. 10-1 at 5); as stated above, all of these paragraphs are invalid. The fourth paragraph seeks evidence of occupancy or possession of the residence, (*id.*), which is valid if sought in relation to other criminal activity in the residence. Assuming the sixth paragraph—seeking "cocaine and/or any other controlled substance," (*id.*)—is valid, it constitutes a tangential, insignificant portion of the warrant. At most, the warrant contains two valid paragraphs and four invalid paragraphs. "While the severance analysis does not end with a mere counting of provisions, the number of valid versus invalid provisions is one element in the analysis of which portion makes up the greater part of the warrant." *Cassady v. Goering*, 567 F.3d 628, 640 (10th Cir. 2009) (internal citations and quotation marks omitted).

The scope and invasiveness of the invalid portions also counsel against severance. *See Sells*, 463 F.3d at 1160. As noted above, the substance of the probable cause statement is directed almost exclusively to evidence of the robbery and Mr. Johnson; the drugs are a mere

afterthought. The invalid portions of the warrant permit a vastly more invasive search into every corner of the residence—including into financial and telephone records and for fingerprints, blood, bodily fluids, "or any other forensic evidence," (Doc. 10-1 at 5)—than would be allowed by the sixth paragraph alone. *See*, *e.g.*, *Cassady*, 567 F.3d at 641 (declining to sever where invalid provisions were broad and invasive and allowed for seizure of evidence unrelated to crime for which there was probable cause); *United States v. Marcus*, 807 F. Supp. 934, 936-37 (E.D.N.Y. 1992) (declining to sever where specific evidence for which there was probable cause made up only an insignificant or tangential part of the warrant and was included only as pretext). Accordingly, the Court cannot conclude that the valid portion "makes up the 'greater part of the warrant,'" *Sells*, 463 F.3d at 1159, and it cannot be severed from the rest of the warrant.

   4. Conclusion

The search warrant was not supported by probable cause. Because it was not objectively reasonable for the executing officer to rely on the warrant, the *Leon* good-faith exception is inapplicable. Alternatively, even assuming the warrant was valid as to evidence of drugs, the tangential, valid portion is overwhelmed by the invasive, overbroad portions. The Fourth Amendment protects the rights of the people to be secure in their homes from unjustified and unreasonable intrusions by the Government. *See Hunsberger v. Wood*, 570 F.3d 546, 552-553 (4th Cir. 2009). Thus, the evidence seized pursuant to the warrant must be suppressed.

It is therefore **ORDERED** that the motion to suppress, (Doc. 10), is **GRANTED**.

This the 19th day of February, 2014.

UNITED STATES DISTRICT JUDGE